CROWELL *v.* CROWELL.

No. 13332. JUNE 13, 1940.

502

*Chalmers, Jackson & Garner,* for plaintiff.

*Albert F. Quirk* and *J. B. McCurdy,* for defendant.

GRICE, Justice. Mrs. Crowell was a resident of Fulton County. The four-year-old son, whose custody under the divorce decree was given to the mother for six months, and then to the father, each to have the child six months of each year, was, at the date of the service of the habeas-corpus order, with the child's maternal grandmother at Arlington, Early County, Georgia. The six-months period when the child was to remain with his mother had expired. In response to the writ she did not produce the child, but filed what was called a special plea to the jurisdiction. The judge heard evidence, and dismissed the petition. The only question presented is, where did the illegal detention exist? The Code, § 50-103, vests jurisdiction in the judge of the superior court of the circuit "where

the illegal detention exists." Mrs. Crowell swore: "I have made no provision to return the boy to Mr. Crowell. Yes, the six-months period is up, and my decision is contrary to the decree, but not contrary to what I thought. I have not given up custody or control of the boy. I just do not want to bring him back up here. I could have brought him back, but just decided I would not."

Counsel for Mrs. Crowell contends that under the authority of *Hunt* v. *Hunt,* 94 *Ga.* 257 (31 S. E. 515), and *Simmons* v. *Georgia Iron & Coal Co.,* 117 *Ga.* 305 (43 S. E. 780, 61 L. R. A. 739), the phrase "where the illegal detention exists" can not mean any other place than the one where the party whose custody is sought actually is at the time of the issuance of the writ. Neither decision so holds. It is expressly stated in the opinion in the *Hunt* case that no question of jurisdiction was made at the trial; and therefore any expression of the learned judge on that subject was obiter. For all that appeared, the mother was at the time in that county where the habeas corpus was issued, and it was in that county that the illegal restraint by her was had; and it was for that reason that it was said in the opinion in the *Hunt* case that jurisdiction did not depend upon the question of residence. In the *Simmons* case there is a learned and interesting discussion on the general subject of habeas corpus; but that decision did not deal with the question here presented, and nothing there ruled or said is helpful on the controverted issue now before us. Our remarks as to the *Simmons* case apply as well to *McBride* v. *Graeber,* 16 *Ga. App.* 240 (85 S. E. 86), cited in the brief of defendant in error. In Rivers *v.* Mitchell, 57 Iowa, 193 (10 N. W. 626), it was ruled: "In habeas-corpus proceedings to recover the custody of a child, the mere fact that such child is, at the time of the petition, in a foreign jurisdiction will not deprive the court of jurisdiction, nor be sufficient excuse for not producing it in obedience to the writ. The important question is, where is the power of control exercised? If by the respondent before the court, he may be required to produce the child and be punished for his failure." In Breene *v.* People, 51 Colo. 342 (117 Pac. 1000), the holding was that, "Where a husband who had separated from his wife without her consent obtained possession of their child, and took it from the State, the trial court, having jurisdiction of both of the parties, had authority upon an application for a writ of habeas corpus to compel the

father to return the child, and produce him before the court." In the opinion it was said: "Numerous cases hold that the writ operates upon the person within the jurisdiction, and he can be compelled to produce a child from without the jurisdiction. In Church on Habeas Corpus, at page 170, it is said: 'The writ of habeas corpus is sometimes resorted to as a foundation for reaching persons restrained of their liberty beyond the jurisdiction of the court to which application is made, but which restraint has been caused by a person acting within the jurisdiction of the court. . . This question comes up most frequently in cases concerning the custody of infant children; and where a person is shown to have once had the custody of a child, and he has parted with it to some one else wrongfully—that is, without legal authority—so that it is true that he can not redeliver the child at the time when its production is required, the child being then out of his possession, custody, and control, the fact that he has so parted with the possession of the child is no answer to proceedings to compel its production on habeas corpus, except where there is clear proof of an absolute impossibility to produce the child.'" For other authorities see the cases cited in 29 C. J. 116, § 113, particularly White v. White, 77 N. H. 26 (86 Atl. 352); Ex parte Young, 50 Fed. 526; Duryee v. Duryee, 188 N. Y. 440 (81 N. E. 313); Shaw v. Shaw, 114 S. C. 300 (103 S. E. 526).

On the precise question here involved this court has never ruled; but, both on principle and authority, we hold that under the facts of this record the illegal detention was at the place of the residence of the child's mother, the respondent, who has the custody and control, and, in legal contemplation, the possession, as she testified that she did have at the time the writ was sued out. The decree of Treutlen superior court, along with the other evidence at the hearing, showed a prima facie right in the father to the custody of the child. *Barlow* v. *Barlow,* 141 *Ga.* 535 (81 S. E. 433, 52 L. R. A. (N. S.) 683); *Milner* v. *Gatlin,* 143 *Ga.* 816 (85 S. E. 1045, L. R. A. 1916B, 977); *Oetter* v. *Oetter, 150 Ga.* 118 (102 S. E. 818). *Judgment reversed. All the Justices concur.*